## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | | |
|---|---|---|
| **EUGENE JACKSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 5:06-00518** |
| | ) | |
| **THOMAS McBRIDE, Warden,** | ) | |
| **Mount Olive Correctional Complex, and** | ) | |
| **C. J. RIDER, Religious Service Coordinator,** | ) | |
| **Mount Olive Correctional Complex,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court are the following Motions: (1) Defendants' Waiver of Reply and Alternative Motion to Dismiss (Doc. No. 10.) , filed on January 15, 2007, and (2) Defendants' Motion to Dismiss or for Summary Judgment in the Alternative (Doc. No. 17.), filed on January 25, 2007. Having fully examined the record in this case, the undersigned has determined that Defendants' Motion to Dismiss (Doc. No. 10.) should be denied and Defendants' Motion to Dismiss or for Summary Judgment (Doc. No. 17.) should be granted.

### FACTUAL AND PROCEDURAL BACKGROUND

On June 26, 2006, Plaintiff, an inmate then in confinement at Mount Olive Correctional Complex [MOCC], in Mt. Olive, West Virginia,[1] and acting *pro se*, filed a Complaint and an

---

[1]  The Court understands that Plaintiff is currently confined at Huttonsville Correctional Complex, in Huttonsville, West Virginia. Plaintiff's claims, however, arise out of the conditions of his confinement at MOCC.

Application to Proceed Without Prepayment of Fees and Affidavit.[2] (Doc. Nos. 1 and 2.) Pursuant to 42 U.S.C. § 1983, Plaintiff alleges that Defendants violated his rights guaranteed by the Free Exercise Clause of the First Amendment to the United States Constitution, the Equal Protection Clause of the Fourteenth Amendment, and of rights protected by Section 3 of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 20000cc-1, *et seq.*, to exercise freely his sincerely held Islamic beliefs. (Doc. No. 1 at 3.) Specifically, Plaintiff alleges that Defendants: (1) refused to allow him and other Muslims to congregate outdoors for prayer on the inmate recreation yard, (2) refused to allow him and other Muslims to work in the MOCC kitchen and prepare meals for the Holy Month of Ramadan, (3) refused him and other Muslims the opportunity to utilize the chapel on more than one day a week, (4) offered nineteen Bible-based chapel services and only two Islamic services, (5) scheduled twenty-one Bible-based chapel television services as opposed to only two Islamic programs, (6) refused him and other Muslims the opportunity to conduct religious based festivals, (7) utilized no exemption for their grooming policy, (8) did not accept Islamic input and an Imam's presence on the Religious Advisory Committee, (9) refused to hire an Imam although they have employed at least one Chaplain, (10) utilize a Religious Advisory Committee that is pro-Christianity and anti-Muslim, (11) failed to consider that Muslim inmates are the least violent inmates and the best behaved in maximum security institutions throughout the country, (12) denied Muslims the opportunity to congregate, and (13) disallowed him and other Muslims the option to purchase scented oils for the practice of their religion. (Doc. No. 1 at ¶¶ 21-52.) Plaintiff asserts that he has exhausted all available administrative remedies and

---

[2] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

2

attaches to his Complaint copies of his administrative grievance forms. (Id. at 3.) Plaintiff seeks

punitive damages and declaratory and injunctive relief. (Id. at ¶¶ 57-60.) Specifically, he requests

a $15,000 award of punitive damages against each Defendant and an Order of the Court declaring

that Defendants' conduct violated the RLUIPA. (Id. at ¶¶ 57, 59.) Additionally, Plaintiff requests

that the Court issue an injunction compelling Defendants to provide Plaintiff and other Muslims at

MOCC the following:

A.  More chapel time for group prayer and designate an area outdoors where
    Muslims can gather quietly and peaceably for group prayer.

B.  Exemption from the no beard policy in accordance wtih WVDOC Grooming
    Standards to grow and maintain a clean and neatly trimmed beard up to one half
    inch.

C.  Authorization to purchase, possess and use scented Muslims oils with
    reasonable terms and conditions.

D.  Employ an Imam to be present to conduct weekly Jumu'ah services and other
    services as necessary.

E.  Allow Muslims to work in the kitchen year round to help prepare and serve the
    non-pork diets and the meals prepared for Muslims during the Holy Month of
    Ramadan.

F.  Greater opportunity to celebrate more Islamic festivals with equal opportunity
    access to the types of food fare and treats otherwise provided to Christian
    inmates who participate in the many bible-based religious festivities held in
    MOCC.

G.  Schedule a greater variety of Islam-based programs for view on the MOCC in-
    house channel on a level proportionally equal to the Christian programs.

(Id. at ¶ 58.)

By Order entered January 11, 2007, the Court granted Plaintiff's Application to Proceed

Without Prepayment of Fees and directed Defendants to respond to Plaintiff's claims for injunctive

relief by January 25, 2007. (Doc. No. 6.) Summonses were issued that day. (Doc. Nos. 7-9.) On

January 15, 2007, Defendants Thomas McBride, Warden of MOCC and C. J. Rider, Religious Services Coordinator, filed their Waiver of Reply and Alternative Motion to Dismiss and Memorandum in Support. (Doc. Nos. 10 and 11.) In seeking dismissal of this case, Defendants assert that Plaintiff failed to adhere to the Total Exhaustion Rule. (Doc. No. 11 at 4-6.) Defendants filed their Response to Plaintiff's claims for injunctive relief on January 17, 2007. (Doc. No. 12.) Defendants attached as Exhibits to their Response, the Declaration of Defendant C. J. Rider, dated January 16, 2007; the State of West Virginia Division of Corrections Policy Directive Number 334.01 regarding Inmate Grooming Standards; and the MOCC Chapel and Religious Services Television Schedule for January 2007. (Doc. No. 12, Exhibits 1-2 and Supplemental Attachment.).

Defendants filed a further Motion to Dismiss or for Summary Judgment in the Alternative and Memorandum in Support on January 21, 2005. (Doc. Nos. 17 and 18.) In seeking dismissal of Plaintiff's Complaint, Defendants contend that Plaintiff has exhausted only three of his claims and that pursuant to the holding of Jones v. Bock, __ U.S. __, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007), the Court must dismiss Claimant's non-exhausted claims. (Doc. No. 18 at 4-6.) Specifically, Defendants assert that Plaintiff has exhausted only those claims regarding his alleged right to group prayer on the recreation yard, to maintain a beard, and to purchase scented oils. (Id.) Defendants further assert that they are entitled to the privilege of qualified immunity (Id. at 6-10.), and that Plaintiff is not entitled to prospective relief. (Id. at 10-11.)

On February 14, 2007, Plaintiff filed his Response to Defendant's Waiver of Reply. (Doc. No. 22.) Plaintiff contends:

> Even if [the] Court rules that all the claims were not exhausted suit cannot be dismissed because, the (3) three main issues were exhausted. Plaintiff is allowed to raise additional claims as evidence of relevant conduct and pattern and practice

4

evidence to show Defendants treated Muslims with contempt or gave Christian beliefs a higher regard.

(Id. at ¶¶ 2-3.) Notwithstanding Plaintiff's Response to Defendant's Waiver of Reply, by Order entered May 14, 2007, the Court notified Plaintiff of his right, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), to file a response to Defendants' Motions to Dismiss or for Summary Judgment. (Doc. No. 27.) Plaintiff did not file a further response to the Motions.  Nevertheless, the undersigned considers in addition to Plaintiff's February 14, 2007, Response, his verified Complaint as his responses to Defendants' Motions and finds the Motions ripe for judicial review.[3]

## THE APPLICABLE STANDARDS

### Motion to Dismiss

   "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S.Ct. 1955, 1959, 167 L.Ed.2d 929 (2007)(reference to Conley v. Gibson, 355 U.S. 41, 47,

---

[3] To the extent that Plaintiff's Response does not address all issues raised in Defendants' Motions, the undersigned will consider the statements contained in his verified Complaint as his response to the Motions for Summary Judgment. See Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991)("[A] verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge.")(citing Davis v. Zahradnick, 600 F.2d 458, 459-60 (4th Cir. 1979)("Holding that the factual allegations contained in a verified complaint establish a prima facie case under 42 U.S.C. § 1983, so as to preclude summary judgment."); see also Neal v. Kelly, 963 F.2d 453, 457 (D.C. Cir. 1992)(Finding that an inmate's verified Complaint under the statutory substitute for the taking of an oath, 28 U.S.C. § 1746(1), by declaring "under penalty of perjury . . . that the foregoing is true and correct,' and dating his signature, " constitutes his affidavit and may be considered in opposition to summary judgment.).

78 S.Ct. 99, 2 L.Ed.2d 80 (1957), omitted.) Deference is given to *pro se* Complaints. See Gordon v. Leeke, 574 F.2d 1147, 1153 (4th Cir.), cert. denied, 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978)(A District Court should allow *pro se* plaintiffs reasonable opportunity to develop pleadings.); Coleman v. Peyton, 340 F.2d 603, 604 (4th Cir. 1965)(*Pro se* plaintiff should be given an opportunity to particularize potentially viable claims.). Where a *pro se* Complaint can be remedied by an amendment, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

**Summary Judgment**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322 - 23, 106 S.Ct. at 2552 - 53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 - 48, 106 S.Ct. 2505,

91 L.Ed.2d 202 (1986).

## **DISCUSSION**

### A,      **Exhaustion of Administrative Remedies.**

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[4] Woodford v. Ngo, 548 U.S. __, 126 S.Ct. 2378, 2382 - 2383, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 922, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief.") "[T]here is no futility exception to the PLRA's exhaustion requirement." Massey v. Helman, 196 F.3d 727, 733 (7th Cir. 1999), cert. denied, 532 U.S. 1065, 121 S.Ct. 2214, 150 L.Ed.2d 208 (2001). But the plain language of the statute requires that only "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedy for

---

[4] 42 U.S.C. § 1997e(a) provides as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); <u>Miller v. Norris</u>, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, <u>Bivens</u> or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. <u>See</u> <u>Jones v. Bock</u>, __ U.S. __, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007), Court's Syllabus (c)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. <u>See</u> <u>Neal v. Goord</u>, 267 F.3d 116, 121-122 (2d Cir. 2001)(*overruled on other grounds*), a § 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in <u>Neal</u>, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, . . . if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. <u>Neal</u>, 267 F.3d at 123. In <u>Freeman v. Francis</u>, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may

not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court.

Proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, 376 F.3d at 655 (internal citations omitted). The West Virginia Division of Corrections' Policy Directive 335.00 establishes procedures whereby state inmates may seek review of complaints which relate to any aspect of their imprisonment, other than appeals of disciplinary and confinement matters. (Doc. No. 1, Exhibit 1.) Within 15 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must submit a G-1 Grievance Form to the Unit Manager. The Unit Manager must respond to the inmate's Grievance within five business days. If the Unit Manager's response was unfavorable, the inmate may appeal within five working days to the Warden/Administrator by filing a G-2 Grievance Form. Should the Unit Manager fail to respond within the five day period of time, the inmate may immediately file a G-2 Grievance Form utilizing the G-1 Grievance Form copy. The Warden/Administrator must respond to the appeal, in writing, within five working days. If the Warden/Administrator, in his/her discretion, determines that an investigation is warranted, a final response shall be made to the inmate within 30 working days. If the Warden/Administrator's response was unfavorable, the inmate may appeal within five working days to the Commissioner/designee of the Division of Corrections. Furthermore, if the Warden/Administrator fails to respond within the five day period of time, the inmate may submit his appeal to the Commissioner/designee within five working days of the lapsed response time. The Commissioner

must respond to the appeal within ten working days. The administrative process is exhausted when the Commissioner responds to the inmate's final appeal.

It is clear that Plaintiff exhausted his administrative remedies respecting the issues raised regarding praying outdoors, growing facial hair, and purchasing scented oils. In his Complaint, Plaintiff acknowledges that he exhausted his administrative remedies by following the three step inmate grievance procedure through which he sought "authorization to pray in the yard, religious exemption from the WVDOC/MOCC no beard policy, and permission to purchase, possess and use scented Islamic Prayer Oils." (Doc. No. 1 at 3.) The exhibits in support of his Complaint establish that Plaintiff raised only these three claims throughout the entire administrative remedy process. On September 28, 2005, Plaintiff submitted a G-1 Grievance Form to his Unit Manager complaining that Administration "has been severely restricting my right to exercise my sincere Muslim beliefs in violation of Section 3 of the Religious Land Use & Institutionalized Persons Act of 2000." (Doc. No. 1, Exhibit 2 at 1.) In a Memorandum attached to his Grievance Form, Plaintiff asserted that he and four other Muslim inmates were peaceably gathered in a non-restricted area of the recreation yard, praying. (Id. at 2.) The next morning Plaintiff states that he was advised that "Muslims are not to gather in the yard for prayer rituals." (Id.) Plaintiff further asserted his right to grow a beard and to purchase, possess, and use Islamic prayer oils. (Id.) Plaintiff explained the bases for his religious beliefs and further asserted that MOCC policy did not equally protect the Muslim inmates. (Id. at 4-7.) He requested that he be allowed to pray in the yard, either peacefully as a group or individually; that he be exempt from the no beard policy; and that he be allowed to purchase, possess, and use Islamic prayer oils for prayer ritual cleansing. (Id. at 7.) The Unit Manager referred the grievance to Defendant C. J. Rider, Religious Services Coordinator, who responded to the

Grievance by Memorandum dated October 4, 2005. (Doc. No. 1 at Exhibit 3.) Mr. Rider advised

Plaintiff that the Religious Services Department and him, personally, do "not discriminate based on

a person's race or religion." (Id. at 1.) Mr. Rider asserted that the inability to pray on the recreation

yard does not substantially burden the exercise of his free religion because he has opportunity to

pray individually in cell and to pray in group Jumah prayers on every Friday in the Chapel. (Id.) He

advised Plaintiff that although Native Americans conduct weekly prayer meetings outside under the

supervision of the Chapel, this policy is enforced equally for Christians and Muslims. (Id.) With

regard to Plaintiff's remaining claims, Mr. Rider asserted that he was denied the right to grow a

beard or purchase and use scented oils for safety concerns. (Id. at 2.)

Plaintiff submitted a G-2 Grievance Form on October 7, 2005, to Warden McBride. (Doc.

No. 1 at Exhibit 4.) By Response dated October 17, 2005, Warden McBride upheld the findings of

the MOCC Religious Services Advisory Committee and denied his requests. (Doc. No. 1 at Exhibit

5.) On October 20, 2005, Plaintiff appealed the Warden's denial of his claims to the Commissioner

(Doc. No. 1 at Exhibit 6.), who likewise denied his request for administrative relief. (Doc. No. 1 at

Exhibit 7.)

Based on the foregoing, the undersigned finds that Plaintiff clearly exhausted his claims as

they relate to his right to assemble for group prayer on the inmate recreation yard, his right to grow

a beard, and his right to purchase, use, and possess scented Muslim prayer oils. Furthermore, it is

clear that Plaintiff exhausted his equal protection claim regarding the use of the inmate yard.

Accordingly, the undersigned finds that Defendants' Motion to Dismiss (Doc. No. 10.) must be

denied and that their second Motion to Dismiss (Doc. No. 17.) Plaintiff's unexhausted claims must

be granted. Plaintiff should be allowed to proceed on the basis of his exhausted claims.

B. **The Religious Land Use & Institutionalized Persons Act (RLUIPA).**

The Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc-1, *et seq.*, provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government demonstrates that the burden "is in furtherance of a compelling governmental interest" and "is the least restrict means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). Once the "plaintiff produces prima facie evidence to support a claim alleging a violation of the Free Exercise Clause" or a violation of RLUIPA, "the government shall bear the burden of persuasion on any element of the claim, except that the plaintiff shall bear the burden of persuasion on whether the law (including regulation) or government practice that is challenged by the claim substantially burdens the plaintiff's exercise of religion." 42 U.S.C. § 2000cc-2(b).

A "religious exercise" is defined under RLUIPA to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). In Lovelace v. Lee, 472 F.3d. 174 (4th Cir. 2006), the Fourth Circuit found that an inmate's observance of "Ramadan, the Islamic holy month of fasting and prayer, qualifies as 'religious exercise' under [42 U.S.C. § 2000cc-5(7)(A)]." RLUIPA does not prevent prison officials from questioning the sincerity and authenticity of an inmate's requested religious accommodation. See Cutter v. Wilkinson, 544 U.S. 709, 725 n13, 125 S.Ct. 2113, 2124 n13, 161 L.Ed.2d 1020 (2005). To determine whether an inmate's particular belief or practice is central to his religion, the Court must determine whether the religious belief or practice is "sincerely held." United States v. Seeger, 380 U.S. 163, 185, 85 S.Ct. 850, 863-64, 13 L.Ed.2d 733 (1965). The Defendants do not challenge

12

the sincerity of Plaintiff's religious beliefs, and therefore, the Court will find for purposes of this opinion that his beliefs and requested accommodations qualify as "religious exercise" under RLUIPA.

Next, the Court must determine whether the alleged burden was substantial. For purposes of RLUIPA, "a substantial burden on religious exercise occurs when a state or local government, through act of omission, 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" Lovelace, 472 F.3d at 187 (*quoting* Thomas v. Review Bd. of Ind. Employment Sec. Div., 450 U.S. 707, 718, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981)). If the plaintiff demonstrates a substantial burden on religious exercise, then the burden shifts to the defendants to show that the particular policy is the least restrictive means of furthering a compelling governmental interest. See 42 U.S.C. § 2000cc-2(b); Lovelace, 472 F.3d at 189-90. In determining whether Defendants have met their burden of demonstrating that the policy is the least restrictive means of furthering a governmental interest, "Courts should apply this standard with 'due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Lovelace, 472 F.3d at 189-90 (*quoting* Cutter, 544 U.S. at 723, 125 S.Ct. at 2123.) Under this framework, the undersigned will first consider whether Defendants' policies substantially burden Plaintiff's right to exercise his Islamic beliefs. If Plaintiff successfully satisfies this burden, the undersigned will then determine whether Defendants' policies are in furtherance of a compelling governmental interest.

### a. **Group prayer on the Inmate Recreation Yard.**

Plaintiff argues that Defendants have substantially burdened the exercise of his Islamic beliefs as follows:

> Group prayer "is a communal obligation upon all male non-travelers for the five
> current prescribed prayers, such the rite of the prayer be public, unless there is a
> valid excuse not to, such as:
>
>     a.  Hardship due to rain or snow that soaks clothing.
>
>     b.  Hardship due to heavy mud from getting soiled or slipping when walking
>        through it.
>
> The demand for group prayer is not eliminated by other than the two above excuses.
> This is Islamic Sacred Law and is written by the "International Institute of Islamic
> Thought," printed by:
>
>     Sunna Brooks
>     P.O. Box 6143
>     Evanston, Ill 60204
>     Library of Congress Catalog Card #93-208496 (1991).

(Doc. No. 1 at ¶¶ 37-39.) Plaintiff asserts that if he is not permitted to pray five times each day with those who are willing to pray with him, then "Satan would surely overtake" him. Consequently, Plaintiff alleges that the prohibition of group prayer substantially burdens the exercise of his Islamic beliefs. (Id.) Plaintiff seeks more chapel time for group prayer and the designation of an area outdoors where Muslims can gather for group prayer. (Id. at ¶ 58A.) Defendants assert that Muslim inmates have chosen to pray in the chapel although they are permitted to pray inside their cells. (Doc. No. 18 at 8.) Defendants assert that MOCC policy prohibits inmates "to conduct corporate prayer in the midst of the inmate recreation yard out of security concerns." (Id.) Defendants contend therefore, that the policy does not substantially burden Plaintiff's right to practice his religion. (Id.)

The undersigned finds that Defendants' policy restricting Muslim inmates from gathering on the outdoor recreation yard does not substantially burden Plaintiff's First Amendment right to practice the Islamic faith. Although Plaintiff asserts that the Islamic religion requires him to participate in group prayer five times each day, the inability to congregate outside on the yard does not frustrate his religion. Plaintiff does not allege that outdoor prayer is essential to his Muslim religion. The undersigned further finds that Defendants' policy preventing corporate prayer on the

14

recreation yard is in furtherance of a compelling governmental policy that order and safety be maintained. Accordingly, Plaintiff has not established a violation of RLUIPA regarding outdoor group prayer.

      **b.**    <u>**Facial Hair**</u>**.**

Plaintiff also argues that the prohibition against facial hair burdens the exercise of his "sincere Islamic beliefs which mandates that Muslims have beards." (<u>Id.</u> at ¶ 41.) He asserts that Defendants' policy contains an exception to this prohibition for medical and religious reasons but that the exemptions are seldom utilized. (<u>Id.</u> at ¶ 26.) Defendants assert that the policy disallowing facial hair is based on security concerns. (Doc. No. 18 at 9-10.) The Declaration of Defendant C. J. Rider indicates that the grooming standards are "necessary to preserve security as long hair can be used to conceal weapons or other contraband." (Doc. No. 12, Exhibit 2 at ¶¶ 11-15.) The Declaration of Mr. Rider further indicates that the grooming standards "are necessary to preserve public safety by preventing escaped inmates from easily altering their appearances from the photographs kept at the institution." (<u>Id.</u> at ¶ 13.) Additionally, the grooming standards are designed to prevent inmates from expressing gang affiliations through changing styles. (<u>Id.</u> at ¶ 14.) Defendants aver that there is no less restrictive means of addressing these security concerns regarding grooming. (<u>Id.</u> at ¶ 15.) Citing <u>Gooden v. Crain</u>, 405 F.Supp.2d 714, 720-21 (E.D. Tex. 2005), Defendants argue that their grooming policy does not substantially burden Plaintiff's religious beliefs. In <u>Gooden</u>, the District Court found that the prison's policy requiring that inmates maintain a clean shaven appearance did not substantially burden the plaintiff's Islamic beliefs as he was otherwise "permitted to practice the fundamental aspects of his religious beliefs." <u>Id.</u>

The undersigned finds that without deciding whether Defendants' policy places a substantial burden on the free exercise of his religion, Defendants' policy is the least restrictive means in furtherance of a compelling governmental interest. In <u>Hines v. South Carolina Dep't of Corr.</u>, 148 F.3d 353, 358 (4th Cir. 1998), the Fourth Circuit found that while a prison's policy requiring that their inmates keep their hair short and face clean shaven may have incidental effects on an inmate's religious beliefs or practices, the policy was implemented solely "to help eliminate contraband, reduce gang activity, identify inmates, and maintain order in South Carolina's prisons." In <u>Scible v. Miller</u>, __ F.3d. __, 2007 WL 858618 (N.D.W.Va. Mar. 19, 2007), the Northern District Court specifically found that a policy nearly identical, or identical, to the one Plaintiff presently challenges, was established in furtherance of a compelling governmental interest. Based on the foregoing, the undersigned finds that Defendants have demonstrated that their grooming policy was established to maintain public safety and security concerns, and therefore, is in furtherance of a compelling governmental interest. As such, Plaintiff's claim is without merit and should be dismissed.

c.    **Scented Oils for Prayer.**

Finally, Plaintiff asserts that the prohibition of scented oils for prayer substantially burdens his ability to practice his religion because the oils are an important part of a Muslim's faith. (Doc. No. 1 at ¶¶ 45-52.) Plaintiff asserts:

> The Hadith, along with the Qur'an, is the source of the instruction to Muslims to use oils during prayer. The Hadith contains the sayings of the Prophet Mohammed. According to Mohammed in the Hadith, a Muslim is required to prepare himself for prayer by bathing, wearing his best clothes, and using his best oils. Bathing alone is not sufficient.
>
> The International Institute of Islamic Thought also instructs Muslims to perform purification baths before going to prayer and to clean the teeth with a toothpick

16

(Miswak), trim the nails, wear perfume (Muslim oil), and one's finest clothes. (Doc. No. 1 at ¶¶ 48 and 49.) Defendants argue that the scented oils pose a threat to security "due to their potential to be used to mask the odor of drugs and inhibit drug detection." (Doc. No. 12, Exhibit 2 at ¶ 16 and Doc. No. 18 at 10.) As an alternative, Defendants assert that unscented oils are allowed to be purchased at MOCC. (Id.) Plaintiff notes that despite the alleged compelling governmental interest, inmates are able to purchase other scented items, such as air fresheners, baby powder, aftershave, bath soaps, deodorants, ointments, hair care products, and bath and shower products, thereby discrediting Defendants' compelling interest.

The undersigned finds that while Plaintiff's right to exercise his Islamic religion is burdened by Defendants' policy, it is not substantially burdened given the alternative of unscented oils available to him. Furthermore, the undersigned finds that even if the policy constitutes a substantial burden on Plaintiff's free exercise of his religion, Defendants' policy is the least restrictive means in furthering a compelling governmental interest. Despite having the option to purchase other scented items at the MOCC commissary, Defendants specifically prohibit the use of the scented oils as their odor may be used to mask the odor of drugs, thereby inhibiting drug detection. See Hammons v. Saffle, 348 F.3d 1250, 1254-55 (10th Cir. 2003). Accordingly, the undersigned finds that Plaintiff has not demonstrated a violation of RLUIPA, and therefore, that his claim must be dismissed.

**C. Free Exercise Clause.**

Inmates clearly retain certain constitutional protections notwithstanding their convictions and confinement in prison. Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 3198, 82 L.Ed.2d 393 (1984); Bell v. Wolfish, 441 U.S. 520, 545, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979). "[F]ederal

courts must take cognizance of the valid constitutional claims of prison inmates." <u>Turner v. Safley</u>, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). Generally speaking, to prevail upon a claim under 42 U.S.C. § 1983, a Plaintiff must prove that (1) a person acting under color of State law (2) committed an act which deprived him of an alleged right, privilege, or immunity protected by the Constitution or laws of the United States.

Of the rights retained by inmates upon incarceration is the right to practice their religion while in prison. <u>See</u> <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 348, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987). The First Amendment of the United States Constitution states as follows:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

The First Amendment applies to State governments through the Fourteenth Amendment. <u>See</u> <u>Board of Educ. of Kiryas Joel Vill. Sch. Dist. v. Grumet</u>, 512 U.S. 687, 690, 114 S.Ct. 2481, 2484, 129 L.Ed.2d 546 (1994.)

The Free Exercise Clause of the First Amendment, as stated above, provides that "Congress shall make no law . . . prohibiting the free exercise of [religion]." <u>U.S. Const. amend. I</u>. Under the Free Exercise Clause, states are prohibited from enacting laws "designed to suppress religious beliefs or practices." <u>Hines</u>, 148 F.3d at 357. The United States Supreme Court has formulated two analyses to determine whether a state law violates the Free Exercise Clause of the First Amendment. First, if the law proscribes conduct irrespective of religious and secular views, the law is considered neutral and therefore, does not violate the Free Exercise Clause. <u>See</u> <u>Employment Div., Dep't of Human Res. v. Smith</u>, 494 U.S. 872, 876-79, 110 S.Ct. 1595, 1598-1600, 108 L.Ed.2d 876 (1990). The Declaration of Defendant C. J. Rider demonstrates that Defendants' policies are applied equally

18

to all inmates, regardless of their secular views. Defendants attach to their Response to Plaintiff's Request for Injunctive Relief a copy of the West Virginia Division of Corrections Policy Directive Number 334.01 as it relates to Inmate Grooming Standards. (Doc. No. 12, Exhibit 2 at 1.) The Policy Directive indicates that hair length shall "not exceed the top of the collar or ears, be no more than three (3) inches on top and be kept neat and clean." (Id.) The Policy further directs that "[f]acial hair will not be permitted. Medical and religious issues will be addressed on a case by case basis." (Id.) As referenced by Plaintiff and Defendants, it does not appear that the rule governing hair length or facial hair was enacted to prevent anyone from practicing their religion. In fact, the Defendants state in their response to Plaintiff's grievances that the rule proscribes long hair and facial hair for safety reasons. Although the Court was not provided with a copy of the policies governing congregating on the prison yard and the use of scented oils, Defendants assert similar safety concerns for their proscription. Accordingly, under the <u>Smith</u> analysis, MOCC's rules governing facial hair, group prayer on the yard, and scented oils, are neutral and do not violate the Free Exercise Clause of the First Amendment.

Second, if the law is reasonably related to legitimate penological interests, then the law is valid and does not violate the Free Exercise Clause. <u>See</u> <u>O'Lone</u>, 482 U.S. at 349, 107 S.Ct. at 2404. To determine the reasonableness of the law, the Court should consider the following factors:

> (1) a regulation must have a logical connection to legitimate governmental interests invoked to justify it; (2) the inmates should have alternative means of exercising their religious rights; and (3) accommodating the inmates' rights should not severely impact other inmates, prison officials and allocation of prison resources generally.

<u>Hines</u>, 148 F.3d at 358 (<i>citing</i> <u>O'Lone</u>, 482 U.S. 350-53, 107 S.Ct. at 2400). With respect to the first factor, it is apparent that the rules at issue were enacted to ensure the safety of inmates and prison officials. Defendants enacted the rules for precautionary safety measures. Concerning the second

factor, it has not been proven that Plaintiff is deprived completely of his right to practice his religion. Plaintiff and Defendants have submitted various memoranda and copies of MOCC rules and policies which allow inmates to possess certain religious items to practice their religions. Thus, Plaintiff has not demonstrated that he has been denied completely of the opportunity to practice his religion solely because he is prohibited from participating in outdoor group prayer, growing a beard, and using scented oils. Finally, with respect to the third factor, the undersigned finds that Plaintiff has not addressed specifically this issue, but nevertheless finds that if inmates were permitted to congregate on the yard for prayer, grow beards, or use scented oils, safety risks would arise which would impact other inmates and prison officials. Accordingly, Plaintiff's claims also fail under the O'Lone analysis.

In Hines, the Fourth Circuit examined under both the Smith and O'Lone approaches a South Carolina prison policy requiring "all male inmates, regardless of their religious views or beliefs, to keep their hair short and their faces shaven." Hines, 148 F.3d at 3578-58. The Court determined the policy was neutral and did not violate the First Amendment even though it had the incidental effect of preventing inmates from wearing their hair in accordance with their respective religions. Id. at 358. The Court also determined that the policy demonstrated a rational means of "achieving the compelling governmental and penological interests of maintaining order, discipline and safety in prisons." Id. Accordingly, pursuant to the Fourth Circuit's analysis in Hines, the undersigned finds that Plaintiff has not demonstrated that he has suffered an actual injury as a result of the Defendants' actions. The MOCC policies respecting inmate group prayer, facial hair, and scented oils appear to be neutral on their face and in their application. The rules furthermore are rationally related to the Defendants' objective of maintaining a secure environment for prisoners and staff. Accordingly, the

20

undersigned finds that Plaintiff has failed to demonstrate that Defendants' policies regarding outdoor prayer groups, facial hair, and scented oils, violates his free exercise of the Islamic religion.

### D. **Equal Protection under the Fourteenth Amendment.**

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV. This amendment essentially directs that all persons similarly situated shall be treated equally. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001); see also, Johnson v. California, 543 U.S. 499, 125 S.Ct. 1141, 160 L.Ed.2d 949 (2005) (To state a cognizable equal protection claim, a plaintiff must allege that defendants acted with intentional discrimination against a class of inmates which included plaintiff.).

Plaintiff alleges that Defendants permitted Christian and Native American inmates to gather outdoors and pray as a group. (Doc. No. 1 at ¶ 20.) He further alleges that Defendants permitted one Native American inmate to maintain long hair (Id. at ¶ 26.), and allowed inmates in general to purchase scented products but would not permit him to purchase scented oils to use to exercise his Islamic religion. (Id. at ¶ 46-47.) He asserts that "[a]fter 9-11, Plaintiff and the Muslims in MOCC have been treated with contempt, as if it were a crime to be Muslim." (Id. at ¶ 28.) Plaintiff however, neither provides any evidence to support this statement nor provides any evidence that Defendants purposefully discriminated against him or the Muslim population at MOCC. Additionally, Plaintiff has not demonstrated that he was treated differently from other classes of inmates. He alleges that Christian and Native American inmates were permitted to gather and pray and play music outside.

The Declaration of C. J. Rider, which remains unrebutted by Plaintiff, however, indicates that no group of inmates are permitted to congregate for prayer in the recreation yard. (Doc. No. 12, Exhibiti 2 at ¶ 5.) Mr. Rider conceded that Native Americans are allowed to conduct weekly prayer meetings outside but noted that these meetings are generally conducted outside. (Id. at ¶ 6.) He noted that the Native Americans' meetings were conducted in an outdoor area near the chapel and were not conducted on the main recreation yard. (Id.) Plaintiff does not assert that Muslims conduct their prayer meetings outside. Rather, he expresses only a desire to conduct the group prayers outside. Accordingly, the undersigned thus finds that Plaintiff has not demonstrated that Defendants purposefully discriminated against him and that he has not established a violation of the Equal Protection Clause.

### E. Qualified Immunity.

A State officer is entitled to qualified immunity if his actions do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The qualified immunity standard involves two considerations: (1) whether the law governing the official's conduct was clearly established and (2) in view of that law, whether a reasonable officer could have believed that his conduct was lawful. Where the law is clearly established, the immunity defense ordinarily should fail because a reasonably competent officer should know the law governing his conduct. Harlow, 457 U.S. at 818 - 19, 102 S.Ct. at 2738 - 39. A person deprives another of a constitutional right in violation of § 1983 if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do which causes the deprivation about which the Plaintiff complains.

Defendants are entitled to qualified immunity "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The Fourth Circuit follows a two-step sequential analysis for determining the validity of a qualified immunity defense: (1) the Court must determine whether the facts viewed in the light most favorable to the Plaintiff establish a deprivation of an actual constitutional right; and, if so, (2) the Court then proceeds to consider whether that right was clearly established at the time of the purported violation. Leverette v. Bell, 247 F.3d 160, 166 (4th Cir.), cert. denied, 534 U.S. 993, 122 S.Ct. 460, 151 L.Ed.2d 378 (2001)(Reversing District Court's determination that Associate Warden Bell, who strip searched an employee of a South Carolina correctional institution upon suspicion that the employee was bringing contraband into the institution, did not have qualified immunity on grounds that no constitutional violation occurred.)

In considering whether the facts viewed in the light most favorable to the Plaintiff establish a deprivation of an actual constitutional right, the undersigned looks first to the constitutional rights asserted by Plaintiff and cases discussing them in the context of facts and circumstances as similar as possible to those alleged by Plaintiff. Plaintiff asserts that his inability to participate in group prayer on the recreation yard, grow a full beard, and use scented oils violates his constitutional rights to free exercise of religion and equal protection under the First and Fourteenth Amendments to the United States Constitution and violates his statutory rights under the RLUIPA. The undersigned has determined that Plaintiff has not stated claims establishing violations of his constitutional and statutory rights. Accordingly, the undersigned finds that Defendants are entitled to qualified immunity.

**F. <u>Plaintiff's Claims for Injunctive Relief</u>.**

Generally, in considering whether to issue an injunction, the District Court must balance the hardships likely to befall the parties if the injunction is, or is not, granted. <u>Blackwelder Furniture Co. of Statesville, Inc., v. Seilig Mfg. Co., Inc.</u>, 550 F.2d 189, 196 (4th Cir. 1977). Proper balancing of the hardships requires the District Court to weigh the relative importance of four factors:

> (1)    the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied;
> (2)    the likelihood of harm to the defendant if the requested relief is granted;
> (3)    the likelihood that the plaintiff will succeed on the merits; and
> (4)    the public interest.

<u>Manning v. Hunt</u>, 119 F.3d 254, 263 (4th Cir. 1997) (*quoting* <u>Rum Creek Coal Sales, Inc., v. Caperton</u>, 926 F.2d 353, 359 (4th Cir. 1991)). Consideration of the first two factors is the first step in the analysis. <u>Blackwelder</u>, 550 F.2d at 196. If the District Court concludes that the balance of the potential hardships favors the Plaintiff, then "it is enough that grave or serious questions are presented; and plaintiff need not show a likelihood of success." <u>Id</u>. When injunctive or prospective relief is requested in the context of allegations that prison conditions violate constitutional rights, 18 U.S.C. § 3626 requires that the District Court focus its attention on additional factors in assessing whether such relief is appropriate and, if so, ordering it. Title 18, U.S.C. § 3626(a)(1)(A) states when prospective relief is appropriate with respect to prison conditions as follows:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

The right to injunctive relief with respect to prison conditions must clearly be predicated upon a finding that a federal constitutional right has likely been violated. The undersigned has determined above that neither Plaintiff's constitutional nor statutory rights substantially burdened the free exercise of his Islamic religion. Having found that Plaintiff did not make a preliminary showing that a violation of his constitutional rights was imminent and/or occurred, the undersigned must find that injunctive relief is not in order under 18 U.S.C. § 3626. The same conclusion is warranted under the Blackwelder analysis.

Beginning with the first two factors in the Blackwelder analysis, Plaintiff has failed to allege either irreparable harm to himself if the requested injunction is denied or a lack of harm to the Defendants if the requested injunction should issue. In fact, after balancing the first two factors, the Court finds that the harm to the Defendants clearly outweighs the alleged harm to the Plaintiff.[5] As mentioned above, the undersigned has already determined that Plaintiff's claims regarding group prayer on the yard, facial hair, and scented oils, do not rise to the level of a constitutional or statutory violation of his rights freely to exercise his religion and that Defendants' policies surrounding these claims are in furtherance of a compelling governmental interest. Regarding the remaining items for

---

[5] The Fourth Circuit stated in *Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994):

> [S]weeping intervention in the management of state prisons is rarely appropriate when exercising the equitable powers of the federal courts. This is true where conditions at the prison have been adjudged unconstitutional following trial on the merits. It is especially true where mandatory injunctive relief is sought and only preliminary findings as to the plaintiffs' likelihood of success on the merits have been made.

In view of this pronouncement of the Fourth Circuit, State Courts are more suited and capable in considering the interests of the parties where injunctions and other special or equitable remedies are sought against State agencies.

25

which he requests injunctive relief, the undersigned finds that the absence of the requested items places a substantial burden on the practice of his religion. Although he requests that an Imam be present to conduct weekly Jumu'ah services, he does not indicate that the absence of an Imam burdens the practice of his religion. Similarly, Plaintiff requests that Muslims be allowed to work in the kitchen to assist in preparing meals during the Holy Month of Ramadan, greater opportunity to celebrate more Islamic festivals, and a wide variety of Islam-based programs to view on the MOCC in-house television channel. Plaintiff neither alleges that the absence of these items and services pressure him to modify his behavior or the practice of his religion nor violates his religious beliefs. Accordingly, the undersigned finds that Plaintiff's request for injunctive relief must be denied.

### PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal analysis and **RECOMMENDED** that the District Court **DENY** Defendants' Motion to Dismiss (Doc. No. 10.), **GRANT** Defendants' Motion to Dismiss or for Summary Judgment in the Alternative (Doc. No. 17.), **DENY** Plaintiff's Request for Injunctive Relief (Doc. No. 1.), and remove this matter from the Court's docket.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Thomas E. Johnston. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written

objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.) cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Judge Johnston, and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to send a copy of the same to counsel of record and to Petitioner, who is acting *pro se*.

DATE: August 31, 2007.

R. Clarke VanDervort
United States Magistrate Judge